## GUY CATLIN v. GEORGE A. ALLEN.

It is too well settled to admit of a doubt, that an action for money had and received will lie to recover back money which has been paid upon a judgment subsequently reversed; and such action may be sustained, either against the party who prosecuted the suit, and for whose benefit the money was paid, or against his attorneys, while they retain the money in their hands. BENNETT, J.

But the party, in whose name the original suit was prosecuted, and against whom the final judgment, reversing the former judgment, was rendered, is not estopped, by such judgment, from proving, in an action brought against him by the defendant in that suit to recover back money paid by him on the former judgment, that he was merely *nominal* plaintiff in that suit, without any interest therein, and that that fact was known to the defendant therein, and that no portion of the money so paid was ever received by him or paid to his use.

Therefore, where an action on a jail bond was prosecuted in the name of the sheriff, to whom it was taken, and judgment was rendered for the plaintiff therein, and the county court refused to stay execution, and the defendant in that action paid the amount of the judgment, and subsequently the judgment was reversed, and final judgment was rendered in favor of the defendant, it was held, in an action brought by that defendant against the sheriff, to recover back the money so paid, that the sheriff might prove that he had no interest in that suit, and never received any portion of the money so paid, but that the action was prosecuted by one who claimed to own said bond by purchase, and that this fact was known to the defendant in that suit, and that the plaintiff in interest received the money so paid by the defendant; and these facts were held a valid defence for the sheriff in this action.

And it was held that the attorneys of record for the plaintiff in the former suit were competent witnesses for the sheriff, in this suit, to prove those facts.

INDEBITATUS ASSUMPSIT for money had and received, and for money paid, laid out and expended. Plea, the general issue, and trial by the court.

The plaintiff, to sustain the issue upon his part, gave evidence from which it appeared that the defendant, Allen, at the August Term of Chittenden County Court, 1839, recovered a judgment

against the plaintiff and one William Ogden, in an action upon a jail bond, taken by the said Allen as Sheriff of Chittenden County; that the court rendering said judgment refused to stay execution thereon; that the plaintiff, Catlin, paid the amount of said judgment to Messrs Maeck & Smalley, attorneys of record for the plaintiff in that case; and that said judgment was reversed by the Supreme Court, and a final judgment rendered in favor of the defendants in that suit.

From the record in that suit, which was introduced by the plaintiff as evidence in this action, it appeared that the defendants in that suit pleaded in bar thereof that the judgment, described in the jail bond on which that suit was predicated, was rendered on a joint and several note given to Orvis & Cole and signed by the said Ogden and one Nathaniel Blood, and that, after Ogden was committed to jail, and after the giving the jail bond, and before any breach thereof, the said Blood, as a joint promissor with Ogden, paid to Orvis & Cole the full amount of said judgment and all costs. To that plea the plaintiff in that suit replied, that Blood was a mere surety for Ogden on the said note; that, after a large amount of costs had accrued in the action upon the note, for which costs Blood was in no way liable, Blood purchased of Orvis & Cole the judgment recovered by them in the action upon the note, and also the jail bond; and he traversed the averment in the plea that Blood paid said judgment and costs as a joint promissor with Ogden.[*]

The defendant, Allen, then offered J. Maeck, and D. A. Smalley, the attorneys of record for the plaintiff in the action upon the jail bond, as witnesses, to prove that Nathaniel Blood brought the jail bond to them, claiming to be the owner and equitable assignee thereof, and procured them to bring the suit thereon in Allen's name,—who had never assigned said bond, but had delivered it to Blood for that purpose,—and that they did so bring the suit; that they were never in any way directed by Allen to bring the suit, and he never controlled the same, but they considered Blood their sole client in the case; that the money, paid to them by the plaintiff, Catlin, on said judgment, was by them received for Blood, and a part of it was passed to Blood's credit upon their books, and the

[*]See that case reported at length, *Allen* v. *Ogden et al.*, 12 Vt. 9.

balance paid to Blood's order; and that Allen never, in fact, personally received any of said money.

The plaintiff objected to the competency of Maeck and Smalley, as witnesses, on the ground of interest, and also objected to any evidence being given of the facts above set forth; but the court overruled both objections, and the witnesses testified, as above detailed.

Upon these facts the county court rendered judgment for the defendant; to which decision the plaintiff excepted.

*C. D. Kasson* for plaintiff.

I. It is well settled, that a party can recover back money, which he has been compelled to pay under an erroneous or reversed judgment. 31 E. C. L. 206. *Lazell* v. *Miller*, 15 Mass. 207. *Stiles* v. *Middlesex*, 8 Vt. 436. *Hopkinson* v. *Sears*, 14 Vt. 500. The only question here is, of whom, or in what manner, is it to be recovered? In *Parsons* v. *Lloyd*, 3 Wils. 341, *Turner* v. *Felgate*, 1 Lev. 95, 2 W. Bl. 845, and *Tichout* v. *Cilley*, 3 Vt. 416, it is treated as settled law that the *nominal party* plaintiff is liable, *in tort*, for all *tortious acts*, done under his process, whether it be *void*, or *voidable*, or any way irregular, and that the officer is not in such case liable; and we understand the defendant's argument to admit the liability in this case, had the injury been a *tort*. But here no *tort*, strictly speaking, was committed by the officer. The only injury done was the causing Catlin to pay the money. Is Allen, then, any the less liable, as the nominal party, because the injury was of a less outrageous character? We say not; but on the contrary there is the greater reason for his liability. *Lamine* v. *Dorrell*, 2 Ld. Raym. 1216. *Davis* v. *Hoy*, 2 Aik. 310.

II. We contend that the money was *in fact* paid to *Allen's use.* It was paid on a *sheriff's bond;* and, if he saw fit to sue in his own name, instead of assigning the bond to the creditors, he was liable to them for the amount of the recovery. He had in fact an *interest* in the recovery, arising out of his official relation. Hence it matters not in this case if the money did in fact go to the creditors entitled to it, as, if so, it was so far in discharge of his liability to them for it.

Catlin v. Allen.

III. It is clear that *somebody* has "received" the plaintiff's money, and equally so that he has "paid" it to *somebody's* "use," and that, too, under circumstances giving him a right of action against such person. The cases all agree that the officer is not liable, and also that the attorneys are not liable, as these are but mere agents. *Sadler* v. *Evans*, 4 Burr. 1984. *Pond* v. *Underwood*, 2 Ld. Raym. 1210–11. 22 Wend. 348. *Stephens* v. *Badcock*, 3 B. & Adol. 354. Chit on Cont. (5th Am. Ed.) 216, (note 2,) 601, 605 n. (1,) 610.

IV. The liability rests, therefore, on Allen, or Blood, who it is said received the money, which Allen brought a suit to recover for him. We deny that we are to be turned over to Blood for several reasons.

1. That, by the *record*, it appears that Allen sued out the process,—that Maeck & Smalley were *his* attorneys,—that *his* execution was paid; and we insist that he is thereby *estopped* from showing by parol that this entire *record* is, throughout, one complicated *lie*.

2. Catlin, in paying the money, was dealing on Allen's responsibility alone; he knew nothing of Blood. See Chit. on Cont. and *Stephens* v. *Badcock*, above cited. Allen had allowed himself to be held out to him as *principal*, and, relying upon such representation, he paid the money.

3. Allen, having knowledge of all the facts, might have claimed an indemnity. He gave up the bond to be sued, with a full knowledge of the consequences, and it was his own fault if he trusted bàd agents.

4. Public policy requires it. The money was recovered on Allen's *official bond;* and it is not to be endured that a public officer shall be allowed to tamper with his securities, taken in *virtue of his office*, and farm them out to barratrous bankrupts for vexatious suits, receiving all the benefits of a party to the record, but shielding himself from its liabilities.

5. A farther potent reason is given by *Rooke* and *Heath*, Justices, in *Bush* v. *Steinman*, 1 Bos. & Pul. 404, that it would, in many cases, work a total denial of justice, if a man is to be driven to search out the secret instigators of suits.

Catlin *v.* Allen.

6. This action proceeds upon the ground that there is something *ex æquo et bono* due to the plaintiff. *Moses* v. *Mc Farland*, 2 Burr. 1005.

V. Maeck & Smalley were not competent witnesses.

1. The evidence offered required a disclosure of professional communications.

2. They were interested to defeat a recovery, as they might be liable over to Allen for a perversion of the funds, or for using his name without authority in the suit, if such were the facts. 3 Stark. Ev. 17, 37, 38, 1722, and cases there cited.

*D. A. Smalley* and *J. Maeck* for defendant.

1. There is no evidence to support the count for money paid. To recover on the count for money had and received it must clearly appear that the defendant has received money, or something which has actually been converted into money. Chit. on Cont., Ed. of 1842, 602–3, and cases there cited. Stark. Ev. 106, and cases cited. In this case the plaintiff's evidence does not show the money into the defendant's hands, but the reverse; and, even if he had received it, this action could not have been maintained, as he is shown to have been the mere trustee, or agent, of Blood, and the money was paid to the principal before this action was commenced. *Sadler* v. *Evans*, 4 Burr. 1985. *Greenway* v. *Hurd*, 4 T. R. 553. *Buller* v. *Harrison*, Cowp. 566. *Stevens* v. *Badcock*, 23 E. C. L. 93. *Baron* v. *Husband*, 24 Ib. 123. *Whitbread* v. *Brooksbank*, Cowp. 69. *Cox et al.* v. *Prentice*, 3 M. & S. 344. *Stratton* v. *Rastall et al.*, 2 T. R. 366. 2 Stark. 113. *Horsefall* v. *Handley*, 4 E. C. L. 46. Chit. on Cont., Ed. of 1842, 610–11. The only case, we have been able to find, 'which tends to support the principle contended for by the plaintiff, is that of *Lyman* v. *Edwards*, 2 Day 153; and that case was considered of doubtful authority in *Field* v. *Maghee*, 5 Paige 539, and was expressly overruled in *Maghee* v. *Kellogg*, 24 Wend. 32.

2. The position, taken by the plaintiff, that the defendant is *estopped* from averring that the money was not received by him, is unfounded. The *nominal* plaintiff is liable, indeed, for *costs*, and must be made a party in a writ of *error*, or *audita querela*; but this

Catlin v. Allen.

is the extent. Not even the case of *Tichout* v. *Cilley*, 3 Vt. 415, goes so far; and the case of *Ross* v. *Fuller*, 12 Vt. 265, puts this doctrine upon its true foundation, and sufficiently answers this argument.

3. The objection, that the witnesses, introduced by the defendant, were interested, is not sustained. The plaintiff shows that Allen knew of the pendency of the suit, and there is no pretence that he forbid their proceeding.

The opinion of the court was delivered by

BENNETT, J.   It is too well settled to admit of debate, that, as a general rule, an action for money had and received will lie to recover back money collected under a judgment subsequently reversed; but the question is, will it lie under the particular circumstances of this case? The judgment against Catlin was obtained in an action upon a jail bond, executed to Allen as sheriff of the county of Chittenden, upon one Ogden's being committed to jail upon an execution in favor of Orvis & Cole. Catlin signed the bond as surety. It appears that one Blood claimed to be the owner and equitable assignee of the bond, and that he procured the suit to be brought upon it, in the name of the sheriff, but for his own benefit. The sheriff had not assigned the bond in form, but had delivered it to Blood for the purpose of collection.

The attorneys, who prosecuted the bond, were employed by Blood, and accounted to him for the money collected. No part of the money was ever paid to Allen, and indeed he had no right to the receipt of it. Catlin was fully advised, while the suit was pending upon the bond, by the pleadings in the case, that Blood claimed that he had purchased of Orvis & Cole the judgment and the bond, and of course understood that he claimed to be prosecuting it for his benefit. As to the validity of this purchase, as between Orvis & Cole and Blood, it matters not, so far as this suit is concerned. Notwithstanding these facts, it is claimed that the defendant is liable for money had and received.

It must readily be admitted that the action would lie against Blood, or against his attorneys, while they retained the money in their hands as belonging to Blood. This is in accordance with

well settled principles; and the case of *Maghee* v. *Kellogg*, 24 Wend. 32, is a full authority to that effect. Upon the reversal of the judgment, Blood could have no equity in retaining the money against Catlin. Upon such reversal, Allen's right, had he been the real plaintiff, must have been at an end; and he being but *nominal* party, the same result must follow as to him, who has the *real* interest.

But it may be said, this is not decisive, and that Catlin should have his election to sue either Blood or Allen. It is quite clear that Allen has not in fact received any of the money collected under the judgment, and had no right to receive any. The bond was given to him as sheriff of the county, and it was his right to assign it to the creditor, and thereby shield himself against an action for an escape. If called upon by the assignee of the judgment creditor, it would be equally the duty of the sheriff to assign the bond; but in the present case Blood did not call for an assignment of the bond, but was satisfied with its delivery to him by the sheriff, with an understanding that he might prosecute it, in the name of the sheriff, for his own benefit. The sheriff received no consideration from Blood for the delivery of the bond to him, and he was in no way answerable over to the judgment creditors, or to Blood, in case of a failure to recover upon the bond. How then can it be said that the sheriff had an interest in that suit, or in its result, beyond his liability for costs? His name was used, in the strictest sense, in trust, and he was a mere man of straw. This was so understood by Catlin,—so regarded by both parties. We think it is clear that Allen has not, in fact, received any money to the use of Catlin, and, upon principle, should not be held liable.

It is, however, alleged in argument, that Allen, being plaintiff of record, is estopped from denying that the money was collected to his use. We think not. We have fully adopted the doctrine, that, even at law, we will look beyond the record and see who is the real plaintiff, and will recognise and protect the rights of the assignee, as fully as if he was the plaintiff upon the record. There is, then, no estoppel in such case, operating in favor of the defendant, against the assignee; and when his interests require it, we regard him as the *real* party. It is true, that the party upon the record, though but nominal, is liable for costs; and proceedings upon the

judgment must be in his name. The case of *Ross* v. *Fuller et al.,* 12 Vt. 265, proceeds upon the ground, that, when there is an attempt to fix a liability upon a party upon the record in a new and independent proceeding, he may be permitted to show the true relation, in which he stands to the suit. This is in accordance with well settled principles.

We think that Messrs Maeck and Smalley were rightfully admitted as witnesses in the county court. There is nothing in the case which would show them liable over to Allen, in case the plaintiff should have recovered in this suit. It appears, from the plaintiff's own showing, that the suit on the bond was prosecuted with the full knowledge of Allen, and that he in no way expressed his dissent to the proceeding. He of course must have assented to their having acted as attorneys, under proper authority; and, as it respects the competency of these witnesses, I do not conceive that it is material, whether this authority was derived immediately from Allen, or from Blood, who claimed to be, and acted as, owner of the demand.

We are all agreed in affirming the judgment of the county court.