## LANGLEY *vs.* WARNER.

An assignee of a demand, who prosecutes an action for the recovery thereof, and obtains judgment in the name of his assignor, but for his own benefit, is bound, on the reversal of the judgment, to refund the money which he has collected on the execution.

But where a judgment is collected, and the money is paid over by the officer holding the execution, to the attorney who prosecuted the suit, an action will not lie, after a reversal of the judgment, against the attorney, to recover back the money, although by agreement between him and his client he retains the money in payment of a debt due from the latter to him.

A party in whose favor a judgment is recovered has, until the judgment is reversed, a perfect title to the money collected on the execution, notwithstanding the pendency of a writ of error or certiorari; and if he pays the money to his creditor, the latter acquires a complete right to hold it, although a reversal afterwards takes place.

A special verdict should find facts, and not the mere evidence of facts, so as to leave nothing for the court to determine except questions of law.

JAMES LANGLEY and Henry G. Langley brought assumpsit in the superior court of the city of New-York, against Thomas Warner, and declared for money had and received. At the trial before VANDERPOOL, J. the jury found a special verdict stating the case in substance as follows:

On the 14th of November, 1845, one Walsh recovered in the marine court of said city, judgment against the plaintiffs in this suit for the sum of $76,22. Execution was immediately issued to the proper officer, who collected the money from the plaintiffs, and on the 25th of the same month paid it to the defendant, who was the attorney for Walsh in the judgment, and who signed a receipt for the money as such attorney. At the time the judgment was obtained Walsh was indebted to the defend-

ant in a sum larger than the judgment; and before the money was collected he had agreed that the amount to be collected should go to the defendant on account of that indebtedness. After the money was paid to the defendant, he and Walsh had a settlement of their account, and on the settlement he gave Walsh credit for the sum received. On the 15th of November, 1845, a certiorari upon the judgment was issued from the superior court, and served upon the marine court, of which the defendant had notice when he received the money on the execution. In January, 1846, the certiorari having been returned, the superior court reversed the judgment and awarded restitution against Walsh. Execution on this judgment of reversal and restitution was issued in favor of the plaintiffs against Walsh, and returned unsatisfied; and the plaintiffs thereupon brought this suit to recover from the defendant the money which had been paid to him as before mentioned.

The superior court gave judgment in favor of the plaintiffs on the special verdict, and the defendant appealed to this court.

*A. Taber*, for appellant, insisted that upon the facts found by the special verdict, the action could not be maintained. The defendant had received the money as attorney for Walsh, and the remedy was against the client. The judgment, he said, until reversed, gave Walsh a title to the money, and he therefore might employ it to pay his debt to the defendant, without making any one except himself liable to refund it on the reversal of the judgment. The special verdict does not find that the defendant was assignee of the judgment.

*A. J. Vanderpool*, for respondents. The action to recover back money, after the reversal of the judgment on which it is collected, lies not only against the party to the record, but against an assignee or party in interest, and the defendant stood in that situation when he received the money. (*Mughee* v. *Kellogg*, 24 *Wend.* 32; *Stevens* v. *Fitch*, 11 *Metc.* 248; *Catlin* v. *Allen*, 17 *Verm.* 158.) Even regarded as an agent merely, the defendant is liable. The money was never actually paid

over to his principal. Merely passing the sum to the account of his client, or giving him credit therefor, will not protect him. It must be an innocent and bone fide actual payment without notice in order to protect him. (*Buller* v. *Harrison, Cowp.* 565 ; *Allen* v. *McKeen,* 1 *Sumn.* 278, 317 ; *Edwards* v. *Hodding,* 5 *Taunt.* 815 ; *Chitty on Cont.* 611 ; *Gray* v. *Gutteridge,* 3 *C. & P.* 40, 41 ; *Hearsey* v. *Pruyn,* 7 *John.* 181 ; *Amidon* v. *Wheeler,* 3 *Hill,* 137.)

BRONSON, Ch. J. If the defendant had been the assignee of the demand on which the suit was brought by Walsh in the marine court, and had commenced and carried on the suit in the name of Walsh, but for his own benefit, he would have been bound, on the reversal of the judgment, to refund the money which had been collected on the execution. (*Maghee* v. *Kellogg,* 24 *Wend.* 32 ; *Catlin* v. *Allen,* 17 *Verm.* 158.) But no such facts are found by the jury ; and the rule is, that a special verdict must find facts—not evidence ; and it must find all the facts which are essential to the party's title, and not leave a part of them to be made out by argument and inference. (*Hill* v. *Covell,* 1 *Comst.* 522 ; *Sisson* v. *Barrett,* 2 *id.* 406.) There is no evidence, I think, from which an assignment could be found ; (*See Miller* v. *Franklin,* 20 *Wend.* 630 ; *Taylor* v. *Bolmer,* 2 *Denio,* 193 ;) but if there was such evidence, it is enough to say, that it was for the jury, and not the court, to find the fact of an assignment.

The case then comes to this : the money in question, in the regular course of judicial proceedings, came to the hands of the defendant as the attorney of Walsh ; and on a subsequent settlement between them, the money was passed to the credit of Walsh on account of his indebtedness to the defendant. It was the same thing, in effect, as though the defendant had first paid over the money to Walsh, and the latter had then re-paid it to the defendant in satisfaction of his debt. About two months afterwards the judgment was reversed, and restitution was awarded to the plaintiffs against Walsh. It was very proper that he should make restitution ; for he had, in effect, received the money

and applied it to the payment of his debt. The plaintiffs proceeded to execution against Walsh, in pursuance of the judgment for restitution; but failing in that, they now seek to recover the amount from the defendant. I see no principle on which the action can be maintained. The defendant has got none of the plaintiffs' money; he has got nothing but his own. Walsh had a perfect title to the money when it was collected—just as perfect as it would have been if no certiorari had been issued. He had a right to do what he pleased with the money; and he made a very proper use of it by paying his debt. The plaintiffs have taken up the strange notion, that because they were trying to get the judgment reversed, Walsh could not give a good title to the money, especially if he paid it to one who knew what they were doing. I am not aware of any foundation for such a doctrine. As Walsh had a good title to the money, he could of course give a good title to the defendant, or any one else. No one was bound to presume that the judgment of a court of competent jurisdiction was erroneous, and would be reversed. The legal presumption was the other way—that the judgment was right and would be affirmed. But if the judgment had been known to be erroneous, the pendency of the proceedings in error could not affect, in the least degree, the title of Walsh to the money. Nothing short of a reversal of the judgment could destroy or impair his right.

We are referred to cases where money paid to an agent has been recovered back from him, notwithstanding the fact that he had given his principal credit for the money in account. But they are all cases where the principal had no right to the money at the time it was paid to the agent; while here, the principal had a perfect right to the money at the time his agent received it. The distinction is obvious; and I can not but marvel that it should have been overlooked.

I am of opinion that the judgment should be reversed, and judgment rendered for the defendant on the special verdict.

Ordered accordingly.